**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

Case No. 0:20-CV-61010-AHS

NACSO NONPROFIT BUSINESS LEAGUE INC.,
Plaintiff,

vs.

CONSUMER FINANCIAL PROTECTION BUREAU,
Defendant.

______________________________________/

**DEFENDANT CONSUMER FINANCIAL PROTECTION BUREAU'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(b)(1), AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Defendant, the Consumer Financial Protection Bureau (CFPB or Bureau), moves that this Court dismiss the Complaint in this case pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff, NACSO Nonprofit Business League Inc. (NACSO), has failed to state a claim against the Bureau upon which relief can be granted. In particular, NACSO's Complaint alleges violations of the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq*. (APA), which permits challenges of final agency action. But the only final agency action identified in NACSO's Complaint was taken not by the Bureau, but by the Federal Trade Commission (FTC), and the FTC is not a party to this action. Moreover, even if NACSO had brought its case against the FTC instead of the Bureau, the case would still have to be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) because there is no subject matter jurisdiction. In particular, the final agency action (taken by the FTC) that NACSO challenges occurred far outside the APA's six-year limitations period, and that limitations period is jurisdictional.

## BACKGROUND

According to the Complaint, NACSO is a non-profit national association that includes credit repair organizations as members. Complaint (Comp.) at ¶ 5. The Complaint describes credit repair organizations as "provid[ing] services to individuals in an effort to improve such individuals' credit history, credit record, or credit rating." *Id.* at ¶ 10.

In 1994, Congress passed the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108 (Telemarketing Act). When it passed the Telemarketing Act, Congress found that "Interstate telemarketing fraud has become a problem of such magnitude that the resources of the Federal Trade Commission are not sufficient to ensure adequate consumer protection from such fraud." 15 U.S.C. § 6101(2). To address this problem, the Telemarketing Act required the FTC to "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices." *Id.* § 6102(a)(1); *see* Comp. at ¶ 15. On August 23, 1995, the FTC fulfilled this requirement by issuing its Telemarketing Sales Rule (TSR). 60 Fed. Reg. 43842 (Aug 23, 1995), codified at 16 C.F.R Part 310.

The TSR describes and prohibits a variety of deceptive and abusive telemarketing acts or practices. One provision applies specifically to the telemarketing of credit repair services:

> It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct: …
> Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until: (i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and (ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved.

16 C.F.R. § 310.4(a)(2); *see* Comp. at ¶ 19. There are also other more general provisions of the TSR that apply to all telemarketers including those who telemarket credit repair services. For example, the TSR prohibits all telemarketers from making false or misleading statements to induce a consumer to pay for goods or services. 16 C.F.R. § 310.3(a)(4). And it prohibits all telemarketers from failing to disclose the total costs of, and any limitations on, the goods or services that the telemarketer is selling. 16 C.F.R. § 310.3(a)(1).

Pursuant to the Telemarketing Act as originally enacted, the FTC enforced the TSR. 15 U.S.C. § 6102(c) (1994). However, the Telemarketing Act was amended in 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (Dodd-Frank Act) so that the Bureau would also have enforcement authority. 15 U.S.C. § 6102(c)(2). Since then, the Bureau has brought several actions to enforce the TSR's provisions regarding credit repair services. *See*, *e.g.*, *CFPB v. Prime Mktg. Holdings, LLC*, No. 2:16-cv-07111-BRO (JEM) (C.D. Cal. Aug. 31, 2017) (Stipulated Final Judgment and Order barring defendant who allegedly violated the TSR from providing credit repair services); *Bureau of Consumer Financial Protection v. Progrexion Mktg., et al.*, No. 2:19-cv-00298-DPB (D. Utah filed May 2, 2019) (alleging that defendants charged advance fees in violation of the TSR); *Bureau of Consumer Financial Protection, et al. v. Commonwealth Equity Group, LLC, et al.*, No. 1:20-cv-10991 (D. Mass. filed May 22, 2020). The Dodd-Frank Act made no change to the FTC's rulemaking authority – the FTC still has the sole authority to amend or repeal the TSR. 15 U.S.C. § 6102(a), (b).[1]

---

[1] But it did require the FTC to consult with the Bureau when it makes certain changes to the TSR: "In prescribing a rule under this section that relates to the provision of a consumer financial product or service that is subject to the Consumer Financial Protection Act of 2010, including any

On May 21, 2020, NACSO filed its Complaint. It seeks review of the TSR under the Administrative Procedure Act. Comp. at ¶ 8. The Complaint includes three counts, all of which challenge the provision of the TSR that prohibits a telemarketer of credit repair services from receiving compensation for those services until six months after promised results have been achieved. The first count alleges that neither the FTC nor the Bureau has the authority to impose this six-month delay. Comp. at ¶¶ 48-59. In particular, it alleges that, when Congress enacted the Credit Repair Organizations Act in 1996, 15 U.S.C. § 1679 *et seq.*, (CROA), this superseded the provision of the TSR restricting when credit repair services may request or receive compensation. The second count alleges that the six-month delay in compensation is a content-based restriction on speech that violates the First Amendment of the Constitution. Comp. at ¶¶ 60-72. And the third count alleges that the six-month delay is unconstitutional because it is an underinclusive restriction on speech. ¶¶ 73-79. The Complaint seeks a declaration that the promulgation of the TSR exceeded Congress's grant of rulemaking authority, and that the TSR is unenforceable because it violates the Constitution.

## DISCUSSION

### I. The Complaint fails to state a claim against the Bureau upon which relief can be granted

NACSO's Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim against the Bureau upon which relief can be granted.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

enumerated consumer law thereunder, the [FTC] shall consult with the Bureau of Consumer Financial Protection regarding the consistency of a proposed rule with standards, purposes, or objectives administered by the Bureau of Consumer Financial Protection." 15 U.S.C. § 6102(b).

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than mere "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 545. The plaintiff must allege facts that "raise the right to relief above the speculative level." *Id.* Granting a motion to dismiss is appropriate only "when it is demonstrated beyond a doubt the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Reeves v. DSI Sec. Servs*., 331 Fed. App'x 659, 661 (11th Cir. 2009).

NACSO has failed to plead factual content sufficient to allow this Court to draw a reasonable inference that the Bureau is liable. NACSO alleges that the Bureau has violated the APA. Comp. at ¶¶ 8, 53, 71. The APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. In its Complaint, NACSO states that "[t]he TSR constitutes final agency action subject to judicial review under the [APA]." Comp. at ¶ 8. But NACSO does not challenge any "final agency action" taken by the Bureau, the only defendant in this case. Although issuance of the TSR constituted final agency action, it was the FTC, not the Bureau, that issued the TSR. Even NACSO recognizes that rulemaking authority under the Telemarketing Act belongs solely to the FTC. *See* Comp. at ¶¶ 18, 54.

Instead of challenging any final agency action taken by the Bureau, NACSO's Complaint alleges that the Bureau has enforced, or intends to enforce, the TSR against NACSO's members. *See* Comp. at page 1, and ¶¶ 3, 22, 43, 46. But bringing an enforcement action, *i.e.*, filing a complaint, does not constitute final agency action. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980) ("[t]he Commission's issuance of its complaint was not 'final agency action.'"); *see*

*also First Nat'l Monetary Corp. v. CFTC*, 677 F.2d 522, 525 (6th Cir. 1982) ("the act of filing a complaint is interlocutory and not 'final'"). Because NACSO's complaint alleges a violation of the APA but fails to identify any final agency action taken by the Bureau, it fails to state a claim upon which relief can be granted, and accordingly must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Even if NACSO had brought its action against the FTC, its Complaint would still have to be dismissed with prejudice because this Court would lack subject matter jurisdiction

As explained above, the only final agency action challenged in NACSO's Complaint was taken by the FTC, not by the Bureau. But even if NACSO had filed its Complaint against the FTC, the Complaint would still have to be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) because this Court would lack subject matter jurisdiction. NACSO's Complaint falls far outside the applicable statute of limitations. The statute of limitations that applies to actions brought pursuant to the APA – six years – is a jurisdictional condition, and as a result of NACSO's failure to file within the limitations period, there is no waiver of sovereign immunity.

Federal courts are courts of limited jurisdiction, and as a result, a district court is powerless to hear a matter where subject matter jurisdiction is lacking. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005). A plaintiff bears the burden of establishing subject matter jurisdiction, *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005), and if the plaintiff fails to shoulder that burden, then case must be dismissed, *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008). When determining whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, this Court should take the allegations in the complaint as true. *McElmurray v. Consol. Gov't of Augusta—Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

As a sovereign, the United States cannot be sued in its own courts unless Congress explicitly authorizes such suit. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). In an action brought pursuant to the APA, one of those conditions is the statute of limitations, which reflects Congress's decision to waive sovereign immunity only if suit is brought within a particular period of time. *See Soriano v. United States*, 352 U.S. 270, 273 (1957) (holding that the court had jurisdiction only with respect to those cases filed within the statute of limitations). As such, compliance with the applicable statute of limitations is a condition of federal court jurisdiction. *Id*.

The statute of limitations that applies to actions brought pursuant to the Administrative Procedure Act is six years and is set forth in 28 U.S.C. § 2401(a).[2] *Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1292 (11th Cir. 2015).

> [A] facial challenge to a regulation must also be made within six years of the regulation's issuance. The reasoning behind this rule is simple: "The grounds for such challenges will usually be apparent to any interested citizen within a six-year period following promulgation of the decision …. The government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure."

*Fla. Keys Citizens Coal. v. West*, 996 F. Supp. 1254, 1256 (S.D. Fla. 1998), quoting *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991). "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of

[2] 28 U.S.C. § 2401(a) provides that "[e]xcept as provided by chapter 71 of title 41 [dealing with certain contract disputes], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

sovereign immunity, and as such must be strictly construed." *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006).

Thus, it would make no difference even if NACSO had brought its Complaint against the FTC – NACSO would still fail to establish subject matter jurisdiction because there is no waiver of sovereign immunity. The sole basis of NACSO's Complaint is its challenge to final agency action pursuant to the Administrative Procedure Act. Comp. at ¶ 8.[3] Again, the United States has waived sovereign immunity only with respect to those challenges to final agency action that are brought within six years of the action. The only final agency action NACSO challenges is the TSR's provision regarding credit repair services (and, in particular, the six-month delay on compensation). *See* Comp. at ¶¶ 48-79. But that provision was issued (by the FTC) in 1995 – 25 years ago – and has not been amended since. *Compare* 60 Fed. Reg. 43842, 43866 (Aug 23, 1995) *with* 16 C.F.R. § 310.4(a)(2) (2019). Accordingly, NACSO's challenge is far outside the six-year statute of limitations, and this would still be true even if NACSO had named the FTC in its Complaint. Thus, NACSO's Complaint should be dismissed with prejudice for lack of jurisdiction.[4]

---

[3] NACSO also invokes 28 U.S.C. § 1331 and Article III of the Constitution. Comp. ¶ 7. However, neither constitutes a waiver of sovereign immunity. *Harbert v. United States*, 206 F. App'x 903, 907 (11th Cir. 2006) (§ 1331 does not waive sovereign immunity); *Smith v. Goodwin*, No. CIV 06-1940-PHX-MHM, 2007 WL 9724818 (D. Ariz. July 13, 2007) (Article III does not waive sovereign immunity); *Gleason v. Dep't of Homeland Sec.*, No. 06-CIV-13115 DLC, 2007 WL 1597955 (S.D.N.Y. June 1, 2007) (same).

[4] It is possible to challenge the constitutionality of a regulation (or an agency's authority to issue that regulation) after the limitations period has expired in two situations, neither of which exists here. First, a plaintiff could challenge a regulation if it can show both that the agency (*i.e.*, the FTC) has, within the preceding six years, taken some new final action with respect to the regulation, and that this new action affects the particular plaintiff. *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997). Second, a defendant in an

## CONCLUSION

For the reasons set forth above, this Court should dismiss NACSO's Complaint.

I certify that, pursuant to Rule 7.1(a)(3) of the Local Rules of this Court, counsel for Defendant, the Consumer Financial Protection Bureau, has conferred with counsel Plaintiff, NACSO Nonprofit Business League Inc., in a good faith effort to resolve the issues raised in this Motion and has been unable to do so.

Dated: August 18, 2020

Respectfully submitted,

MARY McLEOD
General Counsel

JOHN R. COLEMAN
Deputy General Counsel

LAURA M. HUSSAIN
Assistant General Counsel

/s/ *Lawrence DeMille-Wagman*
LAWRENCE DEMILLE-WAGMAN
Senior Litigation Counsel
Phone: 202-435-7957
E-mail: Lawrence.DeMille-Wagman@cfpb.gov

Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, D.C. 20552

Counsel for Defendant
CONSUMER FINANCIAL PROTECTION BUREAU

---

action brought to enforce the TSR may raise challenges to the regulation as a defense. *See*, *e.g.*, *CFPB v. Prime Mktg. Holdings, LLC*, No. CV 16-07111-BRO (JEMx), 2016 WL 10516097, at *9 (C.D. Cal. Nov. 15, 2016) (in an enforcement action brought by the Bureau, the court rejected the argument that CROA superseded the TSR); *In re Nat'l Credit Mgmt. Grp., LLC*, 21 F. Supp. 2d 424, 457, 459-460 (D.N.J. 1998) (in an action brought by the FTC and the State of New Jersey, the court rejected the argument that the payment provisions of the TSR violated the First Amendment).

CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of Defendant Consumer Financial Protection Bureau's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), and Memorandum of Points and Authorities in Support was served on August 18, 2020, on all counsel or parties of record on the Service List below via CM/ECF.

/s/ *Lawrence DeMille-Wagman*__
Lawrence DeMille-Wagman

SERVICE LIST

Lawren Adrian Zann
Beth-Ann Ellenberg Krimsky
Greenspoon Marder LLP
200 East Broward Blvd.
Suite 1800
Fort Lauderdale, FL 33301