**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

Case No. 0:20-CV-61010-AHS

NACSO NONPROFIT BUSINESS
LEAGUE INC.,
      Plaintiff,

vs.

CONSUMER FINANCIAL PROTECTION
BUREAU and FEDERAL TRADE
 COMMISSION,
      Defendants.

_____/

**DEFENDANTS' (THE CONSUMER FINANCIAL PROTECTION BUREAU AND THE**
**FEDERAL TRADE COMMISSION) MOTION TO DISMISS PURSUANT TO FED. R.**
**CIV. P. 12(b)(1) AND 12(b)(6), AND MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT**

Defendants, the Consumer Financial Protection Bureau (CFPB, BCFP, or Bureau) and the

Federal Trade Commission (FTC or Commission), move that this Court dismiss all three counts

of the Amended Complaint for Declaratory Relief filed by Plaintiff, NACSO Nonprofit Business

League Inc. (NACSO). First, this Court lacks subject-matter jurisdiction with respect to all three

counts of the Amended Complaint because those counts allege violations of the Administrative

Procedure Act (APA) but were filed far outside of that statute's six-year jurisdictional statute of

limitations. Moreover, even if this Court did have jurisdiction, it should exercise its discretion and

decline to grant the declaratory relief that NACSO requests because such relief would trench upon

the very purpose of the APA's statute of limitations. Second, as to second and third counts in the

Amended Complaint, those counts should be dismissed not only because this Court lacks subject

matter jurisdiction, but also pursuant to Fed. R. Civ. P. 12(b)(6) because they fail to state a claim

upon which relief may be granted. In particular, although those counts allege violations of the APA, they fail to identify any final agency action taken by either the Bureau or the Commission, a necessary prerequisite to an APA challenge.

## BACKGROUND

According to the Complaint, NACSO is a non-profit national association that includes credit repair organizations as members. Amended Complaint (Compl.) at ¶ 7. The Amended Complaint describes credit repair organizations as "provid[ing] services to individuals in an effort to improve such individuals' credit history, credit record, or credit rating." *Id.* at ¶ 15.

In 1994, Congress passed the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101-6108 (Telemarketing Act). When it passed the Telemarketing Act, Congress found that "[i]nterstate telemarketing fraud has become a problem of such magnitude that the resources of the Federal Trade Commission are not sufficient to ensure adequate consumer protection from such fraud." 15 U.S.C. § 6101(2). To address this problem, the Telemarketing Act required the Commission to "prescribe rules prohibiting deceptive telemarketing acts or practices and other abusive telemarketing acts or practices." *Id.* § 6102(a)(1); *see* Compl. at ¶ 15. On August 23, 1995, the Commission fulfilled this requirement by issuing its Telemarketing Sales Rule (TSR). 60 Fed. Reg. 43842 (Aug 23, 1995), codified at 16 C.F.R Part 310.

The TSR describes and prohibits a variety of deceptive and abusive telemarketing acts or practices. One provision applies specifically to the telemarketing of credit repair services:

> It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct: …
> Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until: (i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and (ii) The seller has provided the person with documentation in the form

2

> of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved.

16 C.F.R. § 310.4(a)(2); *see* Compl. at ¶ 24. There are also other more general provisions of the TSR that apply to all telemarketers including those who telemarket credit repair services. For example, the TSR prohibits all telemarketers from making false or misleading statements to induce a consumer to pay for goods or services. 16 C.F.R. § 310.3(a)(4). And it prohibits all telemarketers from failing to disclose the total costs of, and any limitations on, the goods or services that the telemarketer is selling. 16 C.F.R. § 310.3(a)(1).

Pursuant to the Telemarketing Act as originally enacted, the Commission was the federal agency charged with enforcing the TSR. 15 U.S.C. § 6102(c) (1994). However, the Telemarketing Act was amended in 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376, (Dodd-Frank Act) so that the Bureau would also have enforcement authority. 15 U.S.C. § 6102(c)(2). Since then, the Bureau has brought several actions to enforce the TSR's provisions regarding credit repair services. *See*, *e.g.*, *CFPB v. Prime Mktg. Holdings, LLC*, No. 2:16-cv-07111-BRO (JEM) (C.D. Cal. Aug. 31, 2017) (Stipulated Final Judgment and Order barring defendant who allegedly violated the TSR from providing credit repair services); *BCFP v. Progrexion Mktg., et al.*, No. 2:19-cv-00298-DPB (D. Utah filed May 2, 2019) (alleging that defendants charged advance fees in violation of the TSR); *BCFP, et al. v. Commonwealth Equity Group, LLC, et al.*, No. 1:20-cv-10991 (D. Mass. filed May 22, 2020). The Commission has also recently brought actions enforcing those provisions. *See*, *e.g.*, *FTC v. Grand Teton Pros., LLC*, 3:19-cv-00933 (D. Conn. filed June 17, 2019); *FTC v. BoostMyScore LLC*, No.

1:20-cv-00641 (D. Colo. filed Mar. 6, 2020).[1] The Dodd-Frank Act made no change to the Commission's rulemaking authority – the Commission still has the sole authority to amend or repeal the TSR. 15 U.S.C. § 6102(a), (b).[2]

On September 15, 2020, NACSO filed its Amended Complaint for Declaratory Relief. It filed the Amended Complaint on its own behalf, not on behalf of any of its members. NACSO seeks review of the TSR under the APA. Compl. at ¶ 12. The Amended Complaint includes three counts, all of which challenge the provision of the TSR that prohibits a telemarketer of credit repair services from receiving advance fees for those services until six months after promised results have been achieved. The first count, which names just the Commission, alleges that the Commission lacked the authority to impose this advance-fee prohibition. Compl. at ¶¶ 54-65. In particular, the count alleges that, when Congress enacted the Credit Repair Organizations Act in 1996, 15 U.S.C. § 1679 *et seq.*, (CROA), this superseded the provision of the TSR restricting when credit repair services may request or receive compensation. Compl. at ¶ 60. The second count, which names both the Commission and the Bureau, alleges that the advance-fee prohibition is a content-based restriction on speech that violates the First Amendment of the Constitution. *Id.* at ¶¶ 66-78. And the third count, which also names both the Commission and the Bureau, alleges that

---

[1] NACSO contends that the FTC does not enforce the advance-fee prohibition of the TSR. *See* Compl. at p.2. In fact, the FTC alleged violations of that prohibition in both of the cases cited above.

[2] But it did require the Commission to consult with the Bureau when it makes certain changes to the TSR: "In prescribing a rule under this section that relates to the provision of a consumer financial product or service that is subject to the Consumer Financial Protection Act of 2010, including any enumerated consumer law thereunder, the Commission shall consult with the Bureau of Consumer Financial Protection regarding the consistency of a proposed rule with standards, purposes, or objectives administered by the Bureau of Consumer Financial Protection." 15 U.S.C. § 6102(b).

the advance-fee prohibition is unconstitutional because it is an underinclusive restriction on speech. *Id.* at ¶¶ 79-85. The Amended Complaint seeks a declaration that the promulgation of the TSR exceeded Congress's grant of rulemaking authority, and that the TSR is unenforceable because it violates the Constitution.

## DISCUSSION

NACSO's three-count Amended Complaint names both the Bureau and the Commission as defendants – Count I names the Commission and Counts II and III name both the Bureau and the Commission. All three counts allege that the promulgation of the TSR violates the APA, and all three counts should be dismissed for lack of subject-matter jurisdiction. The TSR was promulgated in 1995, but the Amended Complaint, filed in 2020, falls far outside of the APA's six-year statute of limitations, a limitations period that is jurisdictional. And, even if this Court had subject matter jurisdiction, it should exercise its discretion and decline to enter any relief under the Declaratory Judgment Act. With respect to the second and third counts of the Amended Complaint, which name both the Bureau and the Commission, to the extent that those counts challenge the TSR as applied, they should be dismissed not only for lack of subject matter jurisdiction but also for a second reason: They fail to state a claim against either the Bureau or the Commission upon which relief can be granted. In particular, because the bringing of a lawsuit to enforce the TSR, *i.e.*, the filing of a complaint, is not final agency action, Counts II and III fail to allege any violation of the APA.

**I.     The Amended Complaint should be dismissed with respect to both the Bureau and the Commission because this Court lacks subject-matter jurisdiction**

This Court lacks subject-matter jurisdiction with respect to both the Bureau and the Commission and with respect to all three counts of the Amended Complaint. All three counts

challenge the promulgation of the TSR's advance-fee prohibition, and all three counts allege that the promulgation of that provision violates the APA. The APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review," 5 U.S.C. § 704, and in its Amended Complaint, NACSO states that "[t]he TSR constitutes final agency action," Compl. at ¶ 12. The advance-fee prohibition was promulgated in 1995. The problem for NACSO is that the APA has a six-year statute of limitations, and the statute of limitations is jurisdictional – the government has waived sovereign immunity only with respect to APA claims brought within six years of the final agency action. Because NACSO's Amended Complaint falls far outside of the limitations period, there is no waiver of sovereign immunity. Accordingly, this Court lacks subject-matter jurisdiction and the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Federal courts are courts of limited jurisdiction, and as a result, a district court is powerless to hear a matter where subject-matter jurisdiction is lacking. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005). A plaintiff bears the burden of establishing subject-matter jurisdiction, *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005), and if the plaintiff fails to shoulder that burden, then the case must be dismissed, *In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1042 (11th Cir. 2008). When determining whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction, this Court should take the allegations in the complaint as true. *McElmurray v. Consol. Gov't of Augusta—Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

As a sovereign, the United States cannot be sued in its own courts unless Congress explicitly authorizes it to be sued. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). "A necessary corollary of this rule is that when Congress attaches conditions to legislation waiving

the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). In an action brought pursuant to the APA, one of those conditions is the statute of limitations, which reflects Congress's decision to waive sovereign immunity only if suit is brought within a particular period of time. *See Soriano v. United States*, 352 U.S. 270, 273 (1957) (holding that the court had jurisdiction only with respect to those cases filed within the statute of limitations). As such, compliance with the applicable statute of limitations is a condition of federal court jurisdiction. *Id*.

The statute of limitations that applies to actions brought pursuant to the APA is six years and is set forth in 28 U.S.C. § 2401(a): "[e]xcept as provided by chapter 71 of title 41 [dealing with certain contract disputes], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." *See Alabama v. PCI Gaming Auth.*, 801 F.3d 1278, 1292 (11th Cir. 2015) ("A six-year general statute of limitations applies to APA claims").

> [A] facial challenge to a regulation must also be made within six years of the regulation's issuance. The reasoning behind this rule is simple: "The grounds for such challenges will usually be apparent to any interested citizen within a six-year period following promulgation of the decision …. The government's interest in finality outweighs a late-comer's desire to protest the agency's action as a matter of policy or procedure."

*Fla. Keys Citizens Coal. v. West*, 996 F. Supp. 1254, 1256 (S.D. Fla. 1998), quoting *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991). "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1334 (11th Cir. 2006).

7

The sole basis of NACSO's Amended Complaint is the APA. Compl. at ¶ 8.[3] The only final agency action NACSO challenges is the TSR's provision regarding credit repair services – in particular, the advance-fee prohibition. *See* Compl. at ¶¶ 54-85. But that provision was issued (by the Commission) in August 1995 – more than 25 years ago – and has not been amended since. *Compare* 60 Fed. Reg. 43842, 43866 (Aug 23, 1995) *with* 16 C.F.R. § 310.4(a)(2) (2020). Accordingly, NACSO's challenge is far outside the six-year statute of limitations and NACSO's Amended Complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.

## II. Even if the Court had jurisdiction to hear NACSO's declaratory action, it can and should decline to exercise it in this case

As explained above, the government has not waived its sovereign immunity with regard to NACSO's claims, so the Court lacks jurisdiction to hear this case. But even if this Court somehow had jurisdiction, it should exercise its discretion under the Declaratory Judgment Act (DJA) and decline to exercise any power it may have because entering the declaratory relief that NACSO seeks would conflict with the basic purposes of the APA's statute of limitations.[4] "The Declaratory Judgment Act provides that a court '*may* declare the rights and other relations of any interested party,' * * * not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007)

---

[3] NACSO also invokes 28 U.S.C. § 1331 and Article III of the Constitution. Compl. ¶ 11. However, neither constitutes a waiver of sovereign immunity. *Harbert v. United States*, 206 F. App'x 903, 907 (11th Cir. 2006) (§ 1331 does not waive sovereign immunity); *Smith v. Goodwin*, No. CIV 06-1940-PHX-MHM, 2007 WL 9724818 (D. Ariz. July 13, 2007) (Article III does not waive sovereign immunity); *Gleason v. Dep't of Homeland Sec.*, No. 06-CIV-13115 DLC, 2007 WL 1597955 (S.D.N.Y. June 1, 2007) (same).

[4] The DJA, 28 U.S.C. §§ 2201-2202, "does not, of itself, confer jurisdiction upon the federal courts; a suit brought under the Act must state some independent source of jurisdiction." *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989) (citing *Skelly Oil Co. v. Phillips Co.*, 339 U.S. 667 (1950)). That statute is merely "a remedial arrow in the district court's quiver." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

(quoting 28 U.S.C. § 2201(a), emphasis in original). It is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). *See also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (DJA "gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."). Thus, in declaratory judgment cases, "the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of *practicality and wise judicial administration*." *Wilton*, 515 U.S. at 286 (emphasis added). This means that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* at 282; *accord Edge Sys. LLC v. Aguila*, No. 14-24517, 2015 WL 6447502, at *5 (S.D. Fla. Oct. 26, 2015).

The court's discretion under the DJA is "substantial," and "the range of considerations available to the district court in deciding whether to entertain the declaratory action is vast." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135, 1137-38 (11th Cir. 2005) (cleaned up). The court's decision is "equitable in nature," and not "rigid" or "mechanical." *Id.* at 1135 (citing *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)).

In this case, a number of factors weigh heavily against entertaining NACSO's lawsuit. As discussed above, the APA's six-year statute of limitations in 28 U.S.C. § 2401(a) bars NACSO's claims entirely. But even more than that, the concerns animating that statutory prohibition strongly counsel against hearing this case. "Statutes of limitations are intended to prevent 'the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared'." *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1388 (11th Cir. 1998) (en banc) (quoting *Order of R.R. Telegraphers v. Railway Express Agency,* 321 U.S.

9

342, 348-49 (1944)). They discourage plaintiffs from "sleeping on their rights." *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 351 (1983). "One of the policies underlying the statute of limitations" in APA challenges to rulemaking "is repose." *Harris v. FAA*, 353 F.3d 1006, 1013 n.6 (D.C. Cir. 2004) (quoting *Norwest Bank Minnesota Nat'l Ass'n v. FDIC*, 312 F.3d 447, 452 (D.C. Cir. 2002)). Here, NACSO's Amended Complaint was filed a quarter century after the TSR was promulgated – and nineteen years after the statute of limitations on any facial challenge to that rule had expired. Businesses subject to that rule, including credit repair service providers, have since adjusted their practices to conform to the terms of the rule. If the passage of so many years does not entitle government agencies to the assurance that a rule is safe from facial challenge, administrative rulemaking – and business compliance – will be rendered perpetually uncertain, and the APA's statute of limitations would be a dead letter. "Statutes of limitations are not simply technicalities," however; "they have long been respected as fundamental to a well-ordered judicial system." *Bd. of Regents of Univ. of State of N. Y. v. Tomanio*, 446 U.S. 478, 487 (1980).

Moreover, NACSO's members have a procedurally appropriate means to challenge the application of the TSR if and when either the Bureau or the Commission brings an enforcement action against one of them. Even after the APA statute of limitations has expired, "when an agency seeks to apply the rule, those affected may challenge that application on the grounds that it conflicts with the statute from which its authority derives." *Weaver v. Fed. Motor Carrier Safety Admin.*, 744 F.3d 142, 145 (D.C. Cir. 2014) (internal citations omitted). *See, e.g.*, *CFPB v. Prime Mktg. Holdings*, No. 16-7111, 2016 WL 10516097, *9 (C.D. Cal. Nov. 15, 2016) (in a CFPB enforcement action, the court rejected the argument that the TSR had been superseded by CROA); *In re National Credit Mgmt. Grp., LLC*, 21 F.Supp.2d 424, 459-460 (D.N.J. 1998) (in FTC enforcement action, rejecting the argument that the TSR's payment provisions violate the First

10

Amendment); *BCFP v. Commonwealth Equity Gp., LLC*, No. 20-cv-10991, ECF 30 (D. Mass. Mot. to Dismiss filed Sept. 30, 2020) (defendant raised a challenge to the Commission's authority to promulgate the TSR's advance-fee prohibition and to the provision's constitutionality).[5] At that point, a court may consider any defenses presented, including the legality and propriety of the TSR's advanced-fee prohibition, and the matter can be fully adjudicated. Moreover, when the TSR is contested in the context of a particular enforcement action, constitutional questions may well be avoided if, for example, the case can be resolved in favor of the service provider on other grounds. *See, e.g.*, *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986) (Court's interpretation of Medicare regulation's statutory basis avoids "serious constitutional question").[6] Because NACSO's members will have a full opportunity to challenge the TSR in an appropriate situation, even if this Court had jurisdiction, it should exercise its discretion and not hear this dispute at this time.

## III. Counts II and III of the Amended Complaint fail to state a claim upon which relief can be granted

Although it is not altogether clear, Counts II and III, which name both the Bureau and the Commission, appear to challenge not only the Commission's promulgation of the TSR's advance-fee prohibition, but also efforts by both agencies to enforce that provision. As such, these counts

---

[5] It is also possible to challenge the constitutionality of a regulation (or an agency's authority to issue that regulation) if the agency has taken some new final action with respect to the regulation, and if this new action affects the particular plaintiff. *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997). This exception is, however, inapplicable here; the TSR's advance-fee prohibition has never been amended.

[6] "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 575 (1988).

should be dismissed not only because the Court lacks subject-matter jurisdiction but also because these counts do not identify any final agency action and thus fail to state a claim upon which relief can be granted.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than mere "labels and conclusions, and a formulaic recitation of a cause of action's elements." *Twombly*, 550 U.S. at 545. The plaintiff must allege facts that "raise the right to relief above the speculative level." *Id.* Granting a motion to dismiss is appropriate "when it is demonstrated beyond a doubt the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Reeves v. DSI Sec. Servs.*, 331 Fed. App'x 659, 661 (11th Cir. 2009).

Counts II and III of the Amended Complaint allege that the Bureau and the Commission have violated the APA. The APA provides that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. The Supreme Court has held that "two conditions must be satisfied" for an agency action to be deemed "final" for purposes of judicial review under the APA: "First, the action must mark the consummation of the agency's decisionmaking process," in the sense that "it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *Canal A Media Holding, LLC v. United States Citizenship & Immigration Servs.*, 964 F.3d 1250, 1255 (11th Cir. 2020).

12

Counts II and III appear to challenge not only the promulgation of the TSR's advance-fee prohibition,[7] but also efforts that the Bureau and the Commission, have taken, or intend to take, to enforce that prohibition against NACSO's members. *See* Compl. at page 1, and ¶¶ 3, 38, 49 (naming just the Bureau), and ¶ 52 (naming Defendants (*i.e.*, both the Bureau and the Commission)). To the extent that the counts do, in fact, challenge the agencies' enforcement efforts, they must be dismissed because NACSO has failed to plead factual content sufficient to allow this Court to draw a reasonable inference that either the Bureau or the Commission is liable for a violation of the APA. Bringing an enforcement action, *i.e.*, filing a complaint, does not constitute "final agency action" subject to review under the APA. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980) ("[t]he Commission's issuance of its complaint was not 'final agency action.'"); *see also First Nat'l Monetary Corp. v. CFTC*, 677 F.2d 522, 525 (6th Cir. 1982) ("the act of filing a complaint is interlocutory and not 'final'"). *A fortiori* the mere intent to file an enforcement action is not final agency action. A complaint merely initiates the process of fixing the rights and obligations of the parties. Only the final judgment, after the adjudicatory process has been completed, would mark the point when plaintiffs' rights or obligations can be said to "have been determined." *Bennett*, 520 U.S. at 178. Until then, no "legal consequences will flow." *Id.*

Courts routinely hold that the initiation of an enforcement action does not constitute "final" agency action that would be judicially reviewable under the APA. *See Miss. Chem. Corp. v. EEOC*,

[7] As explained in Part I, this Court lacks subject-matter jurisdiction with respect to NACSO's challenge to the promulgation of the TSR. To the extent that Counts II and III seek to hold the Bureau liable for the TSR's promulgation, those claims against the Bureau should also be dismissed pursuant to Rule 12(b)(6) because only the Commission, not the Bureau, has rulemaking authority with respect to the TSR. *See* 15 U.S.C. § 6102(a), (b).

13

786 F.2d 1013, 1019 (11th Cir. 1986); *LabMD, Inc. v. FTC*, 776 F.3d 1275, 1279 (11th Cir. 2015); *Beverly Health & Rehab. Servs. v. Feinstein*, 103 F.3d 151, 154 (D.C. Cir. 1996). As the Court explained in In *Standard Oil*, the agency's determination that precedes the issuance of a complaint merely represents "a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." 449 U.S. at 239. Noting that the issuance of the FTC's complaint would have no legal force or effect on Standard Oil's business, the Supreme Court cautioned that judicial review "before adjudication concludes" "is likely to be interference with the proper functioning of the agency and a burden for the courts," and thus "should not be a means of turning prosecutor into defendant." *Id*. at 242-43.

Because Counts II and III of NACSO's Amended Complaint allege that the agencies violated the APA but fail to identify any final agency action taken by the Bureau or the Commission, those two counts fail to state a claim upon which relief can be granted. Accordingly, those counts of the Amended Complaint should be dismissed not just pursuant to Rule 12(b)(1), but also pursuant to Rule 12(b)(6).

**CONCLUSION**

For the reasons set forth above, this Court should dismiss NACSO's Amended Complaint.

I certify that, pursuant to Rule 7.1(a)(3) of the Local Rules of this Court, counsel for Defendants, the Consumer Financial Protection Bureau and the Federal Trade Commission, have conferred with counsel Plaintiff, NACSO Nonprofit Business League Inc., in a good faith effort to resolve the issues raised in this Motion and have been unable to do so.

Dated: December 3, 2020                            Respectfully submitted,

| | |
|---|---|
| ALDEN F. ABBOTT<br>General Counsel<br><br>JOEL MARCUS<br>Deputy General Counsel<br><br>*/s/ Imad Abyad*<br>IMAD D. ABYAD<br>Attorney<br>Phone: 202-326-3579<br>Email: iabyad@ftc.gov<br><br>Federal Trade Commission<br>600 Pennsylvania Avenue, N.W.<br>Washington, DC 20580<br><br>Counsel for Defendant<br>FEDERAL TRADE COMMISSION | MARY McLEOD<br>General Counsel<br><br>JOHN R. COLEMAN<br>Deputy General Counsel<br><br>LAURA M. HUSSAIN<br>Assistant General Counsel<br><br>*/s/ Lawrence DeMille-Wagman*<br>LAWRENCE DEMILLE-WAGMAN<br>Senior Litigation Counsel<br>Phone: 202-435-7957<br>E-mail: Lawrence.DeMille-Wagman@cfpb.gov<br><br>Consumer Financial Protection Bureau<br>1700 G Street, N.W.<br>Washington, D.C. 20552<br><br>Counsel for Defendant<br>CONSUMER FINANCIAL PROTECTION<br>BUREAU |