UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| NACSO NON-PROFIT BUSINESS LEAGUE INC., <br><br> **Plaintiff,** <br><br> v. <br><br> CONSUMER FINANCIAL PROTECTION BUREAU and FEDERAL TRADE COMMISSION, <br><br> **Defendants.** | Case No.: 20-cv-61010 |

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, Nacso Non-Profit Business League Inc. ("NACSO"), by and through undersigned counsel and pursuant to L.R. 7.1, files this Response in Opposition to Defendants' Motion to Dismiss [Dkt. No. 25], and respectfully requests the Court to deny the Motion to Dismiss for the following reasons:

- The claims set forth in the Amended Complaint [Dkt. No. 14] challenge the *substantive* application of the Telemarketing Sales Rule, 16 C.F.R. § 310.4(a)(2)(ii) (the "TSR") to credit repair organizations, including members of NACSO, within the last six (6) years. As a result, the claims are not barred by the statute of limitations period set forth in 28 U.S.C. § 2401(a).

- Defendants' fail to identify parallel proceedings that present the same legal issues set forth in this litigation. As such, and pursuant to the authorities cited in the Motion to Dismiss, this Court should exercise its discretion to make the declaration of rights sought in this litigation and deny the Motion to Dismiss.

- The Amended Complaint alleges, and the Motion to Dismiss acknowledges, the final agency action to be the promulgation of the TSR. The Amended Complaint further alleges the *substantive* application of the TSR within the last 6 years. Thus, the Amended Complaint states a claim for relief.

1

- Alternatively, if the Court finds that the Amended Complaint is somehow deficient in any area argued by Defendants, NACSO respectfully requests leave to amend to address any such deficiency, including without limitation, the procedural vehicle under which declaratory relief is sought, as Defendants suggestion that members of NACSO take a "wait and see approach" is not only illogical and contrary to the guidance of the United States Supreme Court, *see, e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007) ("where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing a suit to challenge the basis for the threat—for example, the constitutionality of a law threated to be enforced") (emphasis in original), but also ignores the very real conflict between the TSR and the Credit Repair Organizations Act, 15 U.S.C. §§ 1679 *et seq*. ("CROA").

I.  **ALLEGATIONS IN THE AMENDED COMPLAINT**

The claims asserted by NACSO arise out of the application and enforcement of the TSR by the Consumer Financial Protection Bureau ("CFPB") against credit repair organizations, **and only credit repair organizations**, within the last six (6) years despite the promulgation of the TSR by the Federal Trade Commission ("FTC") (collectively, the FTC and CFPB shall be referred to as "Defendants" or "Government") having exceeded the statutory rulemaking authority conferred on it by the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. §§ 6101 *et seq*. (the "Telemarketing Act"). Am. Compl. at ¶¶ 3, 20-24. The TSR prohibits credit repair organizations, **and only credit repair organizations**, from requesting or receiving payment for services already performed for a minimum of six-months after such services are rendered. *Id.* at ¶¶ 2, 47. Within the last 6 years, CFPB not only has enforced the TSR against credit repair organizations, including members of NACSO, but also has encouraged credit reporting agencies to disregard "disputes submitted by credit repair organizations." *Id*. at ¶¶ 3-4, 37-38, 50. Such enforcement and encouragement financially burdens credit repair organizations based on the

content of their speech, which, in turn, seeks to silence the speech of those organizations. *Id.* at ¶¶ 6, 50.

The TSR conflicts with CROA concerning when a credit repair organization may request or receive compensation for the performance of its services. Am. Compl. at ¶¶ 41-43. CROA provides a credit repair organization cannot charge or receive compensation for the performance of its service "before such service is fully performed." *Id.* at ¶ 42. By contrast, the TSR provides a credit repair organization cannot receive, let alone request, compensation for the performance of its service "until [t]he [credit repair organization] has provided the person with documentation in the form of a consumer report from a consumer reporting agency"—the same agency CFPB has directed to disregard "disputes submitted by credit repair organizations"—"demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved." *Id.* at ¶ 43. As a result, the TSR has a chilling effect on the speech of credit repair organizations, including members of NACSO, because such organizations must wait **at least** 6 months after the performance of service to request or receive compensation for services already performed. *Id*. at ¶ 48; *see also id.* at 76 ("the TSR, as applied, is 'presumptively inconsistent with the First Amended because it imposes a financial burden on speakers because of the content of their speech.' *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 501 U.S. 105, 115 (1991)."). Such an arbitrary waiting period for payment, applicable only to credit repair organizations, eviscerates the ability of NACSO's members to be paid for work already performed, which, in effect, puts the full burden of the consumer's credit status on the credit repair organizations long after services were provided. *Id.* at Preliminary Statement, p. 2; *see also id.* at ¶ 75 ("should the credit repair organization 'represent[] to…improve a person's credit history, credit record, or credit rating' and accomplish just that, but 5 months later the consumer then independently damages his/her credit record…thereby negating the

'represented…improve[ment,]' such credit repair organization would never be compensated for its services").

The TSR, as applied by the Government, infringes on the fully-protected speech of members of NACSO by imposing unconstitutional barriers that suppress their protected speech. *Id.* at ¶ 49. Because there is an actual, justifiable controversy among the parties, a present need for a declaration as to the invalidity and unenforceability of the TSR exists. *Id.* at ¶ 51. Accordingly, the Amended Complaint seeks a declaration from the Court that the TSR, as applied by the Government against credit repair organizations, including members of NACSO, within the last 6 years: (a) exceeds the statutory authority conferred by the Telemarketing Act; (b) conflicts with CROA; and (c) is an illegal and unenforceable violation of the First Amendment rights of credit repair organizations.

## II.     ARGUMENT

### A.  Legal Standards to Dismiss

#### 1.   Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may be either "facial" or "factual." *Yela v. Trending Media Group, Inc.*, No. 19-21717-CIV-MARTINEZ-OTAZO-REYES, 2020 WL 6271044, at *1 (S.D. Fla. Sept. 10, 2020) (citing *Morrison v. Amway Corp.*, 323 F.3d 920, 924 n.5 (11th Cir. 2003). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint…." *Morrison*, 323 F.3d at 924, n.5 (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "In other words, the allegations themselves reveal that subject matter jurisdiction is deficient." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1371 (S.D. Fla. 2015). Facial attacks "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the

allegations in [the] complaint are taken as true for the purposes of the motion." *Id.* (citing *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997)).

"By contrast, factual attacks contest the truth of the allegations, which, by themselves, would be sufficient to invoke federal jurisdiction." *Id.*; *see also Morrison*, 323 F.3d at 924, n.5 ("Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings."). In resolving a Rule 12(b)(1) factual attack, the district court may consider evidence outside the pleading, such as testimony and affidavits. *Morrison*, 323 F.3d at 924, n.5. But, "a court's power to make findings of fact and to weigh the evidence depends on whether the factual attack on jurisdiction also implicates the merits of plaintiff's cause of action." *Lawrence*, 919 F.2d at 1529. If such an attack does not implicate the merits of plaintiff's cause of action, then:

> The trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Garcia*, 104 F.3d at 1261 (quoting *Lawrence*, 919 F.2d at 1529). If, however, such an attack implicates the merits of a plaintiff's cause of action, then:

> The proper course of action for the district court…is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case…Judicial economic is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6)…or Rule 56…both of which place great restrictions on the district court's discretion.…[A]s a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action. The exceptions to this rule are narrowly drawn, and are intended to allow jurisdictional dismissals only in those cases where the federal claim is clearly immaterial or insubstantial.

46251191v1

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir. 1981), *cert denied*, 454 U.S. 897 (1981)).

Here, the Motion to Dismiss does not rely upon testimony, affidavits, or the like to mount a Fed. R. Civ. P. 12(b)(1) factual challenge to the Amended Complaint, but rather appears to assert a Fed. R. Civ. P. 12(b)(1) facial challenge to the Amended Complaint. As such, and as recognized by the Government, "the allegations in [the] complaint are taken as true for the purposes of the motion." *Dapeer*, 95 F. Supp. 3d at 1371; *see also* Motion to Dismiss at § 1, p. 6 ("When determining whether the plaintiff has sufficiently alleged a basis for subject-matter jurisdiction, this Court should take the allegations in the complaint as true. *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.,* 501 F.3d 1244, 1251 (11th Cir. 2007).").

2. Rule 12(b)(6)

A complaint "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads content that allows the court to draw the reasonably inference that the defendant is liable for the misconduct alleged." *Id.* "Detailed factual allegations" are not required. *Id.*

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P 12(b)(6), a court must accept all factual allegations in the complaint as true and evaluate all inferences derived therefrom in the light most favorable to the plaintiff. *See, e.g., Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003). As a result, "the threshold sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low." *Quality Foods de Centro Am. S.A. v. Latin Am. Agri-business Dev. Corp. S.A.*, 711 F.2d 989, 995 (11th Cir. 1983).

Indeed, "[a] complaint must not be dismissed unless it is shown that [the] plaintiff can prove no set of facts in support of [its] claim, which would entitle him to relief. Thus, the movant [must] sustain a very high burden." *Jackam v. Hosp. Corp. of America*, 800 F.2d 1577, 1579 (11th Cir. 1986); *see also Beck v. Deloitte & Touche*, 144 F.3d 732, 735 (11th Cir. 1998),

### B. NACSO's Claims Are Timely

As recognized by the very cases cited by the Government in its Motion to Dismiss, "a cause of action challenging the substantive application of a regulation may accrue well after the regulation was issued." *Fla. Keys Citizen Coalition Inc. v. West*, 996 F. Supp. 1254, 1256 (S.D. Fla. 1998). Specifically, "substantive as-applied challenges may be brought up to six years after the regulation was allegedly unlawfully applied." *Id.*; *see also, e.g., Wind River Min. Corp. v. U.S.*, 946 F.2d 710, 716 (9th Cir. 1991) ("We hold that a substantive challenge to an agency decision alleging lack of agency authority may be brought within six years of the agency's application of that decision"). And those same cases cited by the Government also recognize the allowance of what could be an untimely challenge to a regulation "on the ground that the regulation was outside the agency's statutory authority." *Alabama v. PCI Gaming Authority*, 801 F.3d 1278, 1292 (11th Cir. 2015); *see also Legal Env.'l Assistance Foundation, Inc. v. U.S. E.P.A.*, 118 F.3d 1467, 1473 (11th Cir. 1997) ("we also have jurisdiction to entertain LEAF's contention that the regulations upon which EPA relies are contrary to statute and therefore invalid, regardless of the fact that LEAF's challenge is brought outside the statutory period for a direct challenge to the regulations."); *Wind River Min. Corp.*, 946 F.2d at 715 ("If, however, a challenger contests the substance of an agency decision as exceeding constitutional or statutory authority, the challenger may do so later than six years"). Indeed, "the government should not be permitted to avoid all challenges to its actions, even if *ultra vires*, simply because the agency took the action long before

46251191v1

anyone discovered the true state of affairs." *Wind River Min. Corp.*, 946 F.2d at 714. The Government appears to disagree.

The Government's analysis of its Fed. R. Civ. P. 12(b)(1) argument is predicated *exclusively* on the applicability of the 6 years statute of limitations period to a facial challenge to the TSR. *See, e.g.,* Motion to Dismiss at § 1, p. 7 (citing and quoting *West* for the proposition that "a **facial challenge** to a regulation must be made within six years of the regulation's issuance…." (emphasis added)). The Government does not so much as pay short-shrift to the applicability of the 6 years statute of limitations period to a substantive, as-applied challenge to the TSR, but, instead, simply ignores such applicability. The Government misconstrues the allegations asserted in the Amended Complaint

NACSO is not asserting a facial challenge to the TSR. Rather, as set forth in the Amended Complaint, NACSO is asserting a **substantive, as-applied challenge** to the application of the unlawful TSR to credit repair organizations, including members of NACSO, within the past 6 years. *See, e.g.,* Am. Compl. at ¶¶ 3 ("Within the last 6 years, the CFPB has enforced, and continues to show that it intends to enforce, the TSR against credit repair organizations, including members of NACSO. Examples of such members include…."), 12 ("The substantive application of the TSR constitutes final agency action subject to review…."), 13 ("This action was filed within 6 years of the substantive application of the TSR to members of NACSO."), 49 ("…the TSR's six-month rule that the CFPB seeks to enforce against members of NACSO exceeds the statutory rulemaking authority conferred by Congress in the Telemarketing Act and, as applied, infringes on the fully-protected speech of the members of NACSO by imposing unconstitutional barriers that, in light of the monetary penalties associated with a violation of the TSR, suppress their protected speech."), 74 ("As applied, the TSR targets the credit repair organization industry and chills the fully-protected speech rights of those credit repair organizations, including members of NACSO, based

upon the content of the communication….”), 76 (“As a result, the TSR, as applied, is 'presumptively inconsistent with the First Amendment [because] is imposes a financial burden on speakers because of the content of their speech.'”). Accordingly, and based on the very cases cited by the Government in its Motion to Dismiss, the Motion to Dismiss should be denied as this Court has subject matter jurisdiction to proceed on the merits challenging the substantive application of the TSR to members of NACSO within the last 6 years.

### C. The Court Should Exercise Its Discretion and Permit the Claims To Proceed

The Government is correct in that the Declaratory Judgment Act, 28 U.S.C. § 2201(a) provides that the Court "may declare the rights and other legal relations of any interested party[,]" not that it must. This is not controversial. As reflected in the cases cited in the Motion to Dismiss, the refusal to exercise such discretion is properly exercised where parallel court proceedings presenting the same legal issues are underway. *See, e.g., Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (no abuse of discretion staying declaratory judgment action during parallel state court proceedings); *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328 (11th Cir. 2005) (no abuse of discretion dismissing declaratory judgment action in favor of parallel state court action); *Intravascular Research Ltd., v. Endosonics Corp.*, 994 F. Supp. 564 (D. Del. 1998) (same). But, the Government does not advance such an argument. Instead, the Government appears to assert two contentions for the Court to refrain from addressing the merits of the Amended Complaint, both of which only further support the need for the declaration of rights sought by NACSO:

> 1) The Government asserts that it should be permitted to continue to apply the unconstitutional TSR because without "assurance that [the TSR] is safe from **facial challenge**, administrative rulemaking—and business compliance—will be rendered perpetually uncertain…." Motion to Dismiss at § II, p. 10 (emphasis added).

46251191v1

      2) The Government asserts that NACSO members will have "a full opportunity to challenge the TSR in an appropriate situation." Motion to Dismiss at § II, p. 11.

Concerning the first contention advanced by the Government, and as already discussed, the Amended Complaint does not assert a facial challenge to the TSR. *See* § II(B), *supra*. It asserts a substantive challenge to the TSR. *Id.* And the very cases the Government cites in support of its Fed. R. Civ. P. 12(b)(1) argument contradict such a contention as challenges to agency rulemaking were clearly permitted outside of the 6 year statute of limitations. *Id.* Unsurprisingly, the Government does not cite to any case law supporting the Government's broad contention.

Concerning the second contention advanced by the Government, the United States Supreme Court has made clear that "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing a suit to challenge the basis for the threat—for example, the constitutionality of a law threated to be enforced." *MedImmune, Inc.*, 549 U.S. at 129 (emphasis in original). Yet this is exactly what the Government asserts: the Court should not address the constitutionality of the TSR because NACSO members can live with the threat of an unconstitutional rule being applied to them as they will have "a full opportunity to challenge the TSR" upon the enforcement of the TSR against such member. The Court should decline the Government's request to forego a determination on the merits as to do so ignores the applicable guidance of the Supreme Court. *See, e.g., id*.

### D. Counts II and III State a Claim Upon Which Relief Can Be Granted

The Government's argument asserts Counts II and III should be dismissed because "these counts do not identify any final agency action and thus fail to state a claim upon which relief may be granted." Contrary to such an argument, the Motion to Dismiss identifies the final agency action NACSO challenges, namely, "the TSR's provision regarding credit repair services—in particular, the advance-fee prohibition." Motion to Dismiss at § I*,* p. 8 ("The only final agency action NACSO

challenges is the TSR's provision regarding credit repair services – in particular, the advance-fee prohibition."). And the Fed. R. Civ. P. 12(b)(6) argument advanced by the Government appears to concede the promulgation of the TSR constitutes final agency action—and rightfully so. *See id.* at § III, p. 13 ("Count II and III appear to challenge not only the promulgation of the TSR's advance-fee prohibition, but also efforts that the Bureau and Commission, have taken, or intend to take, to enforce that prohibition against NACSO's members. [citations omitted]. To the extent that the counts do, in fact, challenge the agencies' enforcement efforts, they must be dismissed because NACSO has failed to plead factual content…."). As is evident by the Government's awareness of the nature and basis of the allegations contained in the Amended Complaint, NACSO has stated a claim for relief.

### III.  CONCLUSION

For the foregoing reasons, and as established by the very cases the Government cites in its Motion to Dismiss, the Court should deny the Motion to Dismiss and permit the litigation to proceed on the merits in order to declare the rights of the parties concerning whether (1) the FTC's promulgation of the TSR exceeds its statutory authority, (2) the TSR is an unconstitutional content-based restriction of the protected speech of credit repair organizations, and (3) the TSR is underinclusive and not narrowly tailored, and, thus, violates the U.S. Constitution.

Dated: January 20, 2021                           Respectfully submitted,

                                                      */s/ Beth-Ann E. Krimsky*
                                                    Beth-Ann E. Krimsky
                                                    Florida Bar No. 968412
                                                    Lawren A. Zann
                                                    Florida Bar No. 42997
                                                    GREENSPOON MARDER LLP
                                                    200 E. Broward Blvd., Suite 1800
                                                    Fort Lauderdale, FL 33301
                                                    Tel: (954) 527-6296
                                                    Fax: (954) 333-4027
                                                    beth-ann.krimsky@gmlaw.com
                                                    lawren.zann@gmlaw.com

46251191v1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Response in Opposition to Motion to Dismiss was served on January 20, 2021, by transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record.

*/s/ Beth-Ann E. Krimsky*

46251191v1